PEOPLE v. BENEDICT.

(Supreme Court, General Term, Fourth Department. November, 1892.)

CRIMINAL LAW—EVIDENCE—CHARACTER.

On a prosecution for perjury, where evidence has been admitted to impeach and support the character of defendant, who had testified in his own behalf, it is error to instruct that, if the jury find defendant's character to be bad, such fact may be taken into consideration, with all the other evidence in the case, "in arriving at a conclusion as to whether defendant committed the offense charged," since evidence showing that one is morally capable of committing a crime is not proof that he actually committed it.

Appeal from court of sessions, Otsego county.

A. Edwin Benedict was convicted of the crime of perjury in the third degree, and sentenced to imprisonment in the state prison at Auburn for the term of six years.   He now appeals.   Reversed.

The indictment, in accusing the defendant of the crime of forgery in the second degree, alleges that—

"Heretofore, and on the 19th day of January, 1888, at the town of Laurens, in this county, with intent to injure and defraud one Addison P. Strong and others to the jury unknown, feloniously did falsely make, forge, and counterfeit, and cause and procure to be falsely made, forged, and counterfeited, and willfully assist and act in the false making, forging, and counterfeiting, a certain instrument and writing in the form of a bond, purporting to have been given pursuant to section 2352 of the Code of Civil Procedure, and filed with the clerk of Chenango county, January 23, 1888, upon an application, duly made, to sell certain real estate of Kittie A. Toombs, an infant."

And the indictment, after alleging the instrument in detail, and the acknowledgment thereof before J. F. Newell, a justice of the peace, and the justification of the alleged sureties before the said justice, on the 19th of January, 1888, alleged that the bond in the penal sum of $1,500 was approved by the county judge of Chenango county on the 23d of January, 1888.   Defendant's sister was the wife of Jonas Toombs, and said Toombs died on the 1st day of April, 1887, in the town of Coventry, Chenango county, leaving his widow and two minor children, him surviving, and leaving a farm of about 160 acres.   After the funeral the defendant removed his sister and her two children to his home in Laurens, and proceedings were instituted before the surrogate of Chenango county for the appointment of the defendant as general guardian in April, 1887, and to effectuate the appointment the defendant executed a bond, with Strong and Keyes as sureties, which was filed November 1, 1887, for one of the children, and a similar bond, with the same sureties, for the other child, filed November 1, 1887, by Hon. George W. Ray, who was then acting as attorney in the proceedings.   The instrument charges the defendant with having forged the name of A. P. Strong to the instrument known as "Exhibit No. 8."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

W. H. Johnson and O. C. Tennant, for appellant.

Burr Mattice and S. S. Edick, for respondents.

HARDIN, P. J.   During the trial voluminous evidence was produced, tending to show the defendant guilty of the crime charged in the indictment.   On the other hand, extensive evidence was produced by the defendant, tending to show that he was innocent of the crime charged against him, and that the instrument was executed by the persons whose names appear thereon.   The defendant was sworn as a witness in his own behalf, and gave important evidence bearing upon the principal issue in the case.   Thereafter the people called six witnesses, who gave evidence tending to impeach the general character of the defendant. Thereupon the defendant called six witnesses, who gave evidence tending to sustain his general character.   The defendant was also cross-examined very extensively in respect to many damaging circumstances alleged to have occurred during his life, bearing adversely upon his character.   Thus the question whether his character was good or bad was made a conspicuous issue in the trial.   Of course it was entirely competent for the people to attack his general character after he became a wit-

ness in his own behalf; and it was entirely competent for the defendant to call witnesses to sustain his general character, with a view of giving confidence to him as a witness, as well as for the purpose of presenting a good character for the consideration of the jury in determining whether he was guilty or not of the crime alleged, or to influence the jury in case they had a reasonable doubt as to his guilt.　In the course of the charge delivered by the learned trial judge, he said:

"The testimony of the defendant Benedict is to be considered by you, and tested and scrutinized in the same way that you consider and scrutinize the testimony of any other witness. Yet you will, in determining his credibility, consider the fact that he stands charged with a criminal offense, and that he is therefore an interested party. If you find from the evidence that the character of the defendant is bad, then you may take that fact into consideration, in connection with all the other evidence in the case, in arriving at a conclusion as to whether the defendant committed the offense charged; and you may consider, also, in that connection,—that in connection with all the other evidence in the case,—that men of bad character are more likely to commit offenses than men of good character.　But in this connection it will be proper for me to say to you that, should you find the defendant's character to be bad, you are not permitted from that circumstance to infer that he is guilty of this offense; but it is when that circumstance, taken in connection with all the other evidence in the case, convinces you, beyond a reasonable doubt, that the defendant is guilty of forging the name of Keyes and Strong to this bond, Exhibit No. 8.　The forgery must be proved.　But you may consider, if you so find the fact, that the defendant's character is bad, whether a person of bad character would not be more likely to commit the offense with which the defendant stands charged.　If you find from the evidence that the character of the defendant is good, then you should take that fact into consideration, in connection with all the other evidence, in arriving at a conclusion as to the guilt or innocence of the defendant.　Bear in mind that men of good character are not so liable or likely to commit the offense with which the defendant stands charged as men of bad character.　But it is proper for me to say to you, in this connection, that if you find from all the evidence in this case that the defendant committed the offense with which he stands charged, and you are satisfied of that fact beyond a reasonable doubt, then good character can avail him nothing.　Good character is something upon which the defendant can rely until the crime with which he stands charged is proved against him, beyond a reasonable doubt; but the defendant has the right to have his good character, in this case,—if you find it to be good,—considered by you, in connection with all the other evidence in the case, in arriving at a conclusion in regard to his guilt or innocence; and if you should say from the evidence that the character of the defendant is good, then ask yourselves whether, that being so,—taken in connection with all the other evidence,—whether, upon the whole evidence, that fact being considered, you entertain a reasonable doubt as to the guilt of the defendant: and if you entertain such a doubt, after a fair review and consideration of all the evidence, then your verdict should be ' Guilty.' "

Defendant took an exception "to the charge of the court in substance and to the effect that, if there is any evidence of bad character in this case, it may be considered by the jury upon the question as to whether the defendant is or is not guilty of the crime charged in the indictment;" and the counsel for the defendant also asked the court "to charge the jury, as a matter of law, that they have no right to consider the question as to the good or bad character of the defendant, in determining the question whether he is or is not guilty of the crime charged in the indictment."　This request was "refused, except as charged."　Thereupon an exception was taken.　Then a request was made to the court "to charge the jury that if there is any question—if any question arises —in reference to the good or bad character of the defendant, then it is only to be considered by them as bearing upon the amount of credence

to be given to his testimony, and for no other purpose." Thereupon the court replied, "Refused, except as charged," and the defendant took an exception.

We think the exceptions taken to the charge and to the refusals to charge present error. It is provided in section 389 of the Code of Criminal Procedure that a defendant in a criminal action "is presumed to be innocent until the contrary is proved.". The burden is upon the people to show the guilt of the accused. The testimony should be given of facts legitimately pointing in that direction. People v. Newton, 3 N. Y. Crim. R. 406. Mr. Bishop, in his work on Criminal Law, (volume 1, § 487,) observes:

"If a man is known to be addicted to various kinds of vice and crime, one is more ready to believe him guilty of some new offense that if he were a person of irreproachable character. Still, in point of law, every defendant on trial for a particular crime is presumed to be innocent, both of it and of every other crime, until the contrary is duly shown in evidence."

In considering a somewhat kindred question in Hall v. People, 6 Parker, Crim. R. 673, Peckham, J., said:

"This proof had no direct tendency to show that the prisoner stole the property referred to in this indictment. It did not prove that the one who had stolen that had necessarily stolen this property. It showed, or tended to show, that the prisoner was a thief, and therefore more likely to have stolen this property than if he had been honest. If that proof were proper, then the prosecution might in the first instance prove the bad character of a prisoner, and thus show him more likely to have committed the crime charged. This, however, would not be contended for. Yet the one kind of evidence is just as admissible as the other."

In People v. Corbin, 56 N. Y. 365, in the course of the opinion, it was observed by Rapallo, J.:

"The fact that the prisoner made an unauthorized use of the name of Canoung, if established, shows that he was morally capable of committing the same offense against Van Amburgh, but does not legitimately tend to show that he did so, or that he knew and understood that Van Amburgh's authority had been withdrawn, or that the signature in question was made with a criminal intent."

The learned counsel for the appellant calls our attention to People v. Spriggs, (Sup.) 11 N. Y. Supp. 433. In that case it was ruled that after the judge had fully defined the element of good character as a defense, and stated its effect, "it was not error to refuse a request to charge that evidence of good character, of itself, tends to prove that the defendant is not guilty of the offense charged." In harmony with that principle, we think it may be said that evidence of bad character does not of itself prove that the defendant is guilty of the offense charged in the indictment. In People v. White, 24 Wend. 573, Senator Verplank said:

"The offense must be proved substantially. The harmony and justice of the law give the prisoner the right of adducing evidence of virtuous character to show the improbability of the charge; but otherwise the law must hold every man, whether virtuous or vicious in his course of life, to be innocent of any specific crime until he is proved guilty. * * * The rule and practice of our law in relation to evidence of character rests on the deepest principles of truth and justice. The protection of the law is due alike to the righteous and unrighteous. The sun of justice shines alike 'for the evil and the good, the just and the unjust.' Crime must be proved, not presumed. On the contrary, the most vicious is presumed innocent until proved guilty. The admission of a contrary rule, even in any degree, would open a door not only to direct oppression of

those who are vicious because they are ignorant and weak, but even to the operation of prejudices as to religion, politics, character, profession, manners, upon the minds of honest and well-intentioned jurors. * * * I think it should have no such weight or tendency at all, even when such proof of character was presented in its most direct form."

We think the charge as given, coupled with the effect of the refusals to the requests made in respect to the question of bad character, may have influenced the jury improperly. People v. White, 14 Wend. 115. Perhaps, if the judge had told the jury that if they came to the conclusion that the defendant's character was bad, upon the evidence relating to that subject, they would have been warranted in giving little or no credence to his testimony, they might have found other evidence in the case sufficient to remove all doubt in their minds as to the guilt of the defendant; but with the instruction given the jury may have been in doubt as to the guilt of the defendant, and resolved that doubt by recalling the charge of the judge in respect to the effect of bad character, and thus have reached a verdict adverse to the defendant.

Other important questions are presented in behalf of the appellant, which we do not comment upon, because the views already expressed, if adopted, lead to a new trial. Conviction, order, and judgment of the court of sessions of Otsego county reversed, and new trial ordered, and the clerk directed to enter judgment, and remit certified copy thereof, with the return and decision of this court, to the court of sessions of Otsego county, pursuant to sections 547 and 548 of the Code of Criminal Procedure. All concur.